BANCO CENTRAL Y ECONOMÍAS (en sustitución de BANCO METROPOLITANO DE BAYAMÓN), recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, SECCIÓN TERCERA, recurrido.

*Número:* O-81-493        *Resuelto:* 25 de noviembre de 1981

*Mario Muñoz García*, abogado de la recurrente; el Registrador recurrido compareció *pro se*.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Examinamos en este recurso el requisito que debe satisfacerse para que pueda anotarse preventivamente en el Registro de la Propiedad una demanda bajo el Art. 113 de la nueva Ley Hipotecaria sin la intervención del Poder Judicial. Veamos.

El 4 de diciembre de 1976 el demandante radicó en el Tribunal Superior, Sala de Bayamón demanda titulada "Cobro de Dinero y Ejecución de Hipoteca". Oportunamente presentó en el Registro de la Propiedad copia certificada de la demanda con la súplica de que fuera anotada como "pleito pendiente".(¹) El Registrador negó la inscripción bajo el siguiente fundamento:

De acuerdo al Registro sobre esta finca hay una hipoteca en garantía de pagaré al Portador o tenedor por endoso a su orden, por la suma principal de $50,000.00. No está inscrito la [a]creencia que indica en la demanda o sea el pagaré hipotecario de $6,500.00 a que se alude en la misma. A pesar de que se explica que la hipoteca de $50,000.00 servía de garantía colateral entendemos *que se trata de un derecho de carácter personal que no tiene entrada al Registro*. Art. 38 de la Ley 198. (Énfasis suplido.)

Ante esa denegatoria el demandante presentó solicitud de recalificación. Art. 70 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2273. El Registrador reiteró su dictamen aunque reconoció que el Art. 38,(²) citado originalmente

---

(¹) Los autos contienen información en el sentido de que un año más tarde obtuvo una sentencia a su favor. No obstante, su única petición ante el Registro fue para que se anotara la demanda.

(²) 30 L.P.R.A. sec. 2201.

en su denegatoria, no era de aplicación. No obstante, entendió que el fundamento legal quedaba inalterado y, a tenor con el Art. 71, (³) tomó anotación preventiva a favor del demandante por un término de 60 días. De esta recalificación recurre el demandante.

El análisis adecuado de la controversia exige que transcribamos las alegaciones esenciales de la demanda y las súplicas que tuvo ante sí el Registrador. Se alegó que:

En o alrededor del día 3 de octubre de 1975, la parte demandada por valor recibido suscribió un pagaré colateral por la suma principal de $6,500.00 —más intereses al 9%— anual y demás créditos accesorios, incluyendo como costas, gastos y honorarios de abogado en caso de reclamación judicial una suma igual al 10% —de principal.

Que como garantía colateral del pagaré arriba indicado la parte demandada depositó con el demandante un pagaré hipotecario por $50,000.000 —más intereses al 8% anual y demás créditos accesorios, incluyendo la cantidad líquida y estipulada de $5,000.00— para costas, gastos y honorarios de abogado en caso de reclamación judicial.

En aseguramiento del pagaré hipotecario antes mencionado, la parte demandada otorgó hipoteca voluntaria, según escritura número 40 de fecha 17 de junio de 1975, ante el notario Don Demetrio Luis Latoni, sobre la siguiente propiedad: [Se describe la propiedad.]

Dicha hipoteca se encuentra inscrita al folio 278, —del tomo 93— del Registro de la Propiedad de Toa Alta, Puerto Rico.

Que la parte demandante es la tenedora por valor recibido y de buena fe de los referidos pagarés.

Que la parte demandada ha incurrido en incumplimiento de dicho contrato de préstamo con garantía hipotecaria, por no haber satisfecho el pago del mismo ni de sus intereses a la fecha de vencimiento, a pesar de haber sido requerido para ello, por lo que la parte demandante ha declarado la totalidad de la deuda vencida ascendente a la suma de $6,500.00 más —intereses al 9%—, desde el día 1 de enero de 1976, —hasta su completo pago, más la cantidad adicional de $650.00—, estipulada para gastos y honorarios de abogado.

(³) 30 L.P.R.A. sec. 2274.

Según el mejor saber y entender de la parte demandante, la propiedad antes descrita está afecta a los siguientes otros gravámenes:

Hipoteca por $34,500.00 de principal más créditos, según escritura número 66 del 22 de agosto de 1974, ante el Notario Demetrio Luis Latoni e Hipoteca por $18,600.00 de principal más créditos, según escritura número 99 otorgada en San Juan, el 3 de noviembre de 1970, ante el notario Alberto Vázquez Ortiz.

Finalmente, en la súplica se solicitó que se dictara sentencia decretando: (a) vencida la deuda de $6,500; (b) la existencia a favor de la parte demandante de un gravamen hipotecario; (c) la venta judicial de la propiedad gravada con el pagaré hipotecario ofrecido en garantía colateral; y (d) otros extremos relacionados con la propuesta venta judicial.

I

Varias disposiciones de ley son aplicables. El Art. 112 de la Ley Hipotecaria, Núm. 198 de 8 de agosto de 1979, reza en lo pertinente:

Podrán pedir anotación preventiva de sus respectivos derechos en el Registro:

1ro. El que reclamare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos registrables. 30 L.P.R.A. sec. 2401.

Tiene su origen en el Art. 42(1) de la Ley Hipotecaria de 1893 y el Art. 91 del Código de Enjuiciamiento Civil. El texto vigente se perfila integrando la figura procesal de anotación preventiva y la de *lis pendes*. *Cruz La Corte* v. *Registrador*, 109 D.P.R. 354 (1980). Aun así combinado, en la nueva Ley Hipotecaria su cláusula derogatoria no

incluyó el Art. 91. Art. 254 (30 L.P.R.A. sec. 2802). Posteriormente, en período breve, con la aprobación de las Reglas de Procedimiento Civil de 1979, el Art. 91 antes mencionado fue expresamente derogado por la Regla 72.

Por otro lado el Art. 113 de la misma Ley Hipotecaria reglamenta y cualifica el inciso primero del Art. 112 antes transcrito extableciendo que:

> [N]o podrá hacerse la anotación preventiva sino cuando se ordene por providencia judicial dictada a instancia de parte legítima y en virtud de documento bastante al prudente arbitrio del juzgador, *excepto cuando la acción tenga un derecho real inscrito como base para su ejercicio, en cuyo caso será suficiente para su anotación en el Registro la presentación de copia de la demanda.* 30 L.P.R.A. sec. 2402. (Énfasis suplido.)

De inmediato notamos que este artículo preceptúa dos vías o mecanismos para efectuar una anotación preventiva. La primera requiere la intervención del foro judicial a instancia de parte, y la segunda no exige dicha intervención *pero* la condiciona a que la causa de acción se funde en un derecho real inscrito como base para su ejercicio. Este segundo mecanismo —que constituye una excepción a la regla general que exige la intervención de un tribunal— según el historial legislativo, responde a dos propósitos fundamentales:

> *Para evitar las anotaciones de demandas viciosas*, la medida dispone en su Artículo 113 que podrán anotarse mediante la presentación de copia certificada de la demanda, *aquellas acciones fundadas en un derecho inscrito.* Esto aleja la posibilidad de perjuicio indebido por acciones fraudulentas y *aligera el trámite* en las ejecuciones de hipoteca. (Énfasis suplido.) *Informe de la Comisión de lo Jurídico del Senado, sobre el alcance del P. del S. 792, el cual se convirtió en la actual Ley Hipotecaria,* pág. 11.

Consúltese al respecto S. Torres Peralta, *La Anotación Preventiva de Demanda y el Aviso de Pleito Pendiente al Amparo del Artículo 112(1) de la Nueva Ley Hipotecaria y*

*del Registro de la Propiedad,* 42 Rev. C. Abo. P.R. 407–427 (1981).

## II

El recurrente ampara su solicitud de anotación de su demanda en esta excepción. La debilidad y dificultad de esa posición estriba en que hermenéuticamente, siendo una excepción, la misma necesariamente debe interpretarse en forma limitada, máxime cuando la excepción de ley versa sobre una mecánica procesal que tiende a gravar la finca objeto de la misma y que ha cobrado hoy, en nuestro medio forense, una vital importancia en la efectividad de los créditos. Así lo reconocimos al interpretar el Art. 91, sobre *lis pendens* —que equivale a la excepción del Art. 112— en el caso rector de *Kermit Const. Corp.* v. *Registrador,* 103 D.P.R. 583 (1975):

> El aviso de demanda que autoriza el Art. 91 no pasa por el tamiz de la discreción judicial. Es un acto voluntario del demandante, el cual cuando es procedente, ni siquiera puede ser dejado sin efecto por el demandado mediante la prestación de fianza. Es por ello que los Registradores deben ser exigentes en su calificación asegurándose que de la propia faz de la demanda surja claramente que la acción afecta el título o la posesión de la propiedad que se pretende gravar. Aun en el caso de las anotaciones preventivas de demanda que autoriza el Art. 42 de la Ley Hipotecaria, de las que puede librarse un demandado mediante prestación de fianza, veamos el siguiente comentario del comentarista español Morell que estimamos, por las razones que lo fundamentan, aplicable con mayor razón a los avisos de demanda:

> "Dados los efectos de las anotaciones preventivas y la mancha . . . que representan respecto al inmueble o derecho anotado, se comprende que no deban concederse con extrema facilidad, y que la ley exija la presentación de documento que se estime bastante . . . precepto que supone dos requisitos necesarios: uno, la existencia de documento que excluye toda reclamación fundada en contratos verbales, información testifical u otros medios más o menos informales; y otro que el documento sea bastante

para obtener la anotación, llevando al ánimo cierta convicción de verdad y de probable éxito. . . ." Morell, *Legislación Hipotecaria*, 2da ed., 1928, T. III, pág. 39.

*El Registrador de la Propiedad, por lo tanto, en el descargo de su función de calificación debe analizar en conjunto la demanda presentádale para determinar si la naturaleza de la acción incoada se refiere sólo a derechos de obligación sin trascendencia directa real.* De permitirse la anotación de un aviso de demanda ante los hechos presentes en el caso de autos, hechos que no presentan con debida certeza que el título de una propiedad inmueble esté afectado, constituiría una liberalización injustificada del procedimiento de aseguramiento de sentencia. Ello se prestaría a la coacción, amenaza y conminación de un deudor mediante una reclamación incierta y vaga que no persiga la obtención o modificación del título de un inmueble, sin que se cumpla con el requisito de prestación previa de fianza; que es garantía esencial para responder al dueño de los daños que puedan irrogársele a consecuencia de una anotación ilegal. Págs. 588–590.[4]

Hemos visto que el Registrador al negarse a hacer la anotación preventiva se amparó en dos fundamentos: (1) que se trataba de un derecho de carácter personal; y (2) que no estaba inscrito el pagaré de $6,500.

El primer fundamento señalado por el Registrador no es determinante sobre si procede o no la anotación. En *Kermit Const. Corp.*, supra, reconocimos que el hecho de que la acción presentada fuera o no de naturaleza personal por sí solo no determinaba si la anotación de demanda procedía bajo el Art. 91. Lo crucial era si la acción radicada *afectaba* el título de una propiedad inmueble.

[N]uestra jurisprudencia ha establecido que el criterio principal que debe informar la determinación de si una acción puede ser objeto de una anotación de aviso de demanda lo es si el título o el derecho de posesión del inmueble sobre el que se pretende anotar quedaría afectado de triunfar la parte promovente en su reclamación, o sea, si

---

[4] Seguido en *Maldonado Cruz* v. *Registrador*, 107 D.P.R. 71 (1978).

el verdadero y principal propósito de la acción es el de obtener una modificación del título o del derecho de posesión. Pág. 586.

■ Hemos visto que de la faz de la demanda que se pretende anotar se desprende que lo que existe es una obligación personal. Para garantizarla el deudor dio en *prenda* el pagaré hipotecario que se describe y alude en el segundo apartado. Es evidente, pues, que una vez incumplida la deuda, ese acreedor tiene pleno derecho de proceder judicialmente al cobro de la deuda y la ejecución de la prenda, o ante notario proceder a ejecutarla, cumpliendo con los demás requisitos exigidos por el Art. 1771 del Código Civil, 31 L.P.R.A. sec. 5030. Manresa reconoce esa dualidad de remedios:

> En su virtud, el acreedor prendario tiene dos medios para realizar su crédito en el caso de que no sea satisfecho en su oportunidad, a saber: 1°., promover el juicio correspondiente, procediendo por la vía judicial contra la cosa prendada, y 2°., proceder extrajudicialmente a la enajenación de la prenda en pública subasta ante Notario con citación del deudor y del dueño de la misma si fuere persona distinta de aquél. . . . Manresa, *Código Civil*, 6ta ed. rev., 1973, Tomo 12, pág. 596.

■ Advertimos que cualesquiera de los dos mecanismos que se utilice traerá consigo un efecto sobre el pagaré hipotecario inscrito. Podemos entonces decir que *al ejecutarse la prenda*, necesariamente, a largo plazo, se afectará la hipoteca. En este sentido no es oponible el primer fundamento señalado por el Registrador. Ahora bien, en cuanto al segundo fundamento —novedoso en nuestro medio jurídico— le asiste la razón. El Art. 91 derogado[5]

[5] "El texto español del Art. 91 no concuerda con el texto inglés del cual proviene, pero ya hemos resuelto que la traducción correcta es la que hicimos en *Manrique de Lara* v. *El Registrador*, 23 D.P.R. 864 (1916), que reza como sigue:

'En una acción que *afecte* al título o al derecho de posesión de propiedad inmueble, el demandante al tiempo de presentar la demanda y el demandado al tiempo de formular su contestación, cuando en dicha contestación se solicite un

no exigía, *como lo hace ahora el Art. 113* que "la acción tenga un derecho real inscrito como base para su ejercicio" como requisito para que se pudiera anotar el pleito utilizando únicamente una copia certificada de la demanda *sin* intervención del Poder Judicial. Esa diferencia es fundamental. Al presente no es suficiente que simplemente se afecte un derecho real, sino que es necesario que la acción tenga un derecho real inscrito como base para su ejercicio.

### III

Ante el derecho reseñado es ineludible concluir que si bien la demanda menciona y describe la existencia de un derecho real —como lo es el pagaré hipotecario de $50,000— la obligación reclamada de $6,500, que es la verdadera causa de acción esgrimida, no tiene apoyo en ese derecho real inscrito. [6] Esta obligación lo que posee como base es simplemente un pagaré personal *que no se encuentra inscrito en el Registro*. Si como apuntáramos antes, el mecanismo procesal de anotación preventiva sin mediación del Poder Judicial constituye la excepción a la regla general, resolvemos entonces que para las partes poder aprovecharlo tienen que cumplir cabalmente con todos los requisitos de ley. De lo contrario no procede la anotación tal como ocurre en el caso de autos.

*Se dictará sentencia confirmando la determinación del Registrador.*

---

remedio a su favor, o en cualquier tiempo después, pueden presentar para su anotación al registrador del distrito en que esté situada la propiedad o alguna parte de la misma, un aviso de estar pendiente la acción, que contenga los nombres de las partes, el objeto de la acción o defensa y una descripción de la propiedad afectada por dicha acción.' *Manrique de Lara,* supra, págs. 865–866." *Kermit Const. Corp.,* supra, págs. 585–586.

[6] Es significativo que en el caso de autos el demandante acreedor solicitante, al presentar su demanda para anotación, pagó derechos arancelarios correspondientes al pagaré personal de $6,500 montantes a $7.